UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL SHAUN KIRK,

                              Plaintiff,

                                                                        CASE # 12-CV-6075-FPG

v.

                                                                        DECISION & ORDER

CAROLYN M. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY[1],

                              Defendant.

_____

        Plaintiff Michael S. Kirk brings this action pursuant to the Social Security Act ("SSA")

seeking review of a final decision of the Commissioner of Social Security ("Commissioner"),

which denied his application for Disability Insurance Benefits ("Disability").  The parties have

filed competing motions for judgment on the pleadings (Dkt. ##4,6), and because I find that

substantial evidence supports the Commissioner's decision, Defendant's Motion for Judgment on

the Pleadings is granted, Plaintiff's Motion for Judgment on the Pleadings is denied, and the

Complaint is dismissed.

BACKGROUND

        A.      The Plaintiff's Injury and Medical Records

        Plaintiff worked in the Coudersport, NY area as an assistant produce manager and

assistant grocery store manager, and held these positions continuously for a period of over 15

years prior to 2008.  R. at 19, 31[2].  On July 29, 2008, Plaintiff was visiting relatives in Kentucky,

_____

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael
Astrue pursuant to Fed. R. Civ. P. 25(d).  The Clerk of the Court is requested to amend the
caption accordingly.

[2] The administrative record of this matter is referred to as "R. ___."

and was ejected from a motor vehicle after his relative who was driving fell asleep at the wheel. R. at 233. Plaintiff sustained injuries, and has not worked since the accident. R. at 15.

Plaintiff was airlifted from the scene of the July 29, 2008 accident and admitted to the University of Kentucky Medical Hospital. R. at 233. An x-ray of his chest revealed multiple rib fractures. R. at 246. CT scans of the cervical and lumbar spines revealed no acute fractures, but showed "mild, degenerative changes." R. at 240. After reviewing the CT scans and the x-ray images, Dr. Brian Sonka, the attending doctor, diagnosed Plaintiff with mild traumatic brain injury, a sternal fracture, a T3 superior endplate fracture and a scalp laceration. R. at 451. Dr. Sonka discharged the Plaintiff on July 30, 2008. He prescribed painkillers and wrote Plaintiff a "work excuse for light duty work for up to a week" due to pain. R. at 454-55.

Plaintiff returned home from Kentucky, and was seen by his treating physician, Dr. Lisa Robertson. On August 5, 2008, Dr. Robertson ordered an MRI of the Plaintiff's thoratic and cervical spine. R. at 543-45. The images revealed "no acute fractures," but did show several compression fractures, multilevel spondylosis, disc protrusions, mild central-canal stenosis, and several other degenerative changes. *Id.* Dr. Robertson also ordered an ultrasound of the Plaintiff's lower extremities, which was negative. R. at 546.

Dr. Robertson continued to see Plaintiff over a series of appointments, and recorded the Plaintiff's evolving condition. On September 22, 2008, Dr. Robertson noted that Plaintiff's neck was "immobile" due to his brace, his range of motion was "severely limited with pain," and his spine and musculature were tender. R. at 337.

At his October 2008 examination, Plaintiff complained of continued pain. R. at 498. However, he denied fatigue and numbness. *Id.* Dr. Robertson's objective examination noted that Plaintiff "walk[ed] with a normal gait," the strength in both his upper and lower extremities

was 5/5, his range of motion improved in both his neck and spine and the associated pain and tenderness subsided. R. at 499.

Plaintiff had another follow-up appointment in December 2008. R. at 501. There, he denied musculoskeletal pain, fatigue, and numbness altogether. *Id.* The objective examination was virtually normal. Dr. Robertson noted that Plaintiff walked with a normal gait, his neck had full range of motion with no pain, his spine had no tenderness and no joint restrictions, and his lower and upper extremities had full strength. R. at 502. An EMG suggested radiculopathy or possible diabetic neuropathy. R. at 266. An MRI of the cervical spine revealed some degenerative changes including bulging discs, but also noted edema had resolved. R. at 254. An MRI of the lumbar spine also revealed minor to moderate wedging and disc protrusions, but noted the decrease in edema was indicative of "healing compression fractures." R. at 255.

Plaintiff presented again in April 2009 complaining of back pain. R. at 504. Dr. Robertson's objective examination remained virtually unchanged from her previous one. R. at 505. Nonetheless, she noted that Plaintiff's neck and back pain may be "chronic." *Id.* She commented that Plaintiff had "severe pain with sitting or standing in both the neck and back" and "could not maintain any position for any length of time." *Id.* Furthermore, she stated that Plaintiff was unable to lift more than three pounds in physical therapy. *Id.* Plaintiff was prescribed Oxycodone and Metformim. *Id.*

Dr. Robertson examined the Plaintiff again in May 2009, July 2009, October 2009, July 2010, and November 2010, where the primary focus during these appointments was Plaintiff's diabetes. R. at 507-24. Dr. Robertson's examinations revealed the following: no pain (R. at 508, 510, 516, 519, 521); "full R[ange] O[f] M[otion]" in the spine and neck (R. at 508, 510, 513, 516, 519, 523); "full strength" in his arms and legs (R. at 508, 510, 513, 516, 519, 523); no numbness/neuropathy (R. at 507, 509, 512, 515, 518, 521); no fatigue (R. at 507, 515, 518, 521);

no problems sleeping (R. at 521); reflexes and mobility in all extremities intact (R. at 508, 510, 513, 516, 519, 523); no fatigue (R. at 507, 515, 518, 521); and normal gait (R. at 508, 510, 513, 516, 519, 523).

However, Dr. Robertson composed a narrative on August 11, 2010, in which she stated that Plaintiff's motor vehicle injuries were not improving with treatment.  R. at 418.  Dr. Robertson also indicated that Plaintiff had consistent pain in his neck and back since the accident, preventing Plaintiff from sitting for more than 30 minutes at a time before needing to lie down. *Id.* On February 9, 2011, she concluded Plaintiff was "totally disabled" based upon her "clinical findings" including cervical pain, back pain, arm weakness and numbness, uncontrolled sugars, and retinal hemorrhages; MRI findings; and lab studies. R. at 551-52.  In a letter written to Plaintiff's attorney dated May 11, 2011, Dr. Robertson explained that by "totally disabled," she meant Plaintiff was "unable to stand for more than 15 minutes at a time, and could not sit for more than 15-20 minutes at a time before needing to get up and move around or lay down." R. at 561.

Dr. Alan Gillick, an Orthopedist who treated Plaintiff during this same time period,  also noted Plaintiff's evolving condition in his treatment notes from August 20, 2008, through May 4, 2009.  R. at 259-65.

Plaintiff's first examination with Dr. Gillick was on August 20, 2008, where Plaintiff presented with pain and numbness. R. at 265.  Dr. Gillick reviewed x-ray imaging studies and diagnosed Plaintiff with compression fractures and localized kyphosis.  *Id.*  The physical examination revealed tenderness across the cervical thoracic junction and Dr. Gillick noted that flexion caused increased pain. *Id.* Dr. Gillick recommended a brace for the Plaintiff. *Id.*

A follow-up examination occurred on September 15, 2008. R. at 264.  During the exam, Plaintiff stated that wearing the brace resulted in a "significant improvement in pain." *Id.*

However, Plaintiff did state that the pain was lingering. *Id.* Upon physical examination, Dr. Gillick noted tenderness in the spine and kyphosis, but found that Plaintiff's sensation was normal. *Id.* A follow-up x-ray deemed the condition "slightly improved." *Id.*

In October 2008, Plaintiff presented to Dr. Gillick with "some increased low back discomfort." R. at 263. The results from Dr. Gillick's physical examination remained unchanged from the September 2008 visit. *Id.* Dr. Gillick recommended weaning the Plaintiff out of the brace and into a Philadelphia collar. *Id.*

Dr. Gillick treated the Plaintiff again in November 2008. R. at 262. Plaintiff stated that his pain did not improve since his last visit. *Id.* Dr. Gillick noted that Plaintiff's walking/standing tolerance was only about 1.5 hours. *Id.* Dr. Gillick's physical examination revealed spinal tenderness as well as "discomfort" with range of motion. *Id.*

Dr. Gillick began noting significant improvements in December 2008. Dr. Gillick opined that Plaintiff's pain "lessened significantly." R. at 256. While the physical exam revealed some kyphosis, Plaintiff's range of motion was "much improved," his discomfort had decreased, and his upper extremity and motor sensation was normal. *Id.* Dr. Gillick mentioned that Plaintiff's lingering left arm pain could be caused by a herniated disc. *Id.*

Improvements were also noted again during the next exam in February 2009. R. at 261. Dr. Gillick noted that Plaintiff was making "very gradual strides" in physical therapy. *Id.* However, Dr. Gillick also noted that Plaintiff's neck "fatigues" forcing Plaintiff to lie down about 2-3 hours apart during "periods of time." *Id.* The physical examination revealed improved range of motion and decreased tenderness. *Id.* Dr. Gillick recommended Plaintiff receive epidural steroid injections and continue with physical therapy. *Id.*

Further improvements were noted in March 2009. R. at 260. Plaintiff presented to Dr. Gillick with some low back pain, but with "much improved" pain and mobility in his neck and

upper back. *Id.* Imaging studies of the spine were "unremarkable," and Dr. Gillick recommended continued physical therapy. *Id.*

The last examination with Dr. Gillick was conducted on May 4, 2009. R. at 259. Dr. Gillick noted that the improvements in pain Plaintiff was experiencing "plateaued." *Id.* The physical examination revealed some spinal tenderness as well as some kyphosis. *Id.* Dr. Gillick recommended Plaintiff continue physical therapy, but also prescribed Tramadol and Vicodin. *Id.* Dr. Gillick now remarked that Plaintiff was "disabled from work activity." *Id.*

Consulting examiner Dr. Vinkayant N. Shah concluded Plaintiff could perform "light work" in August 2009. R. at 411. By "light work," Dr. Shah meant Plaintiff had the ability to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for about 6 hours in an 8-hour day and sit for the same amount of time, and push or pull an unlimited amount of weight. *Id.* Dr. Shah reached this conclusion based upon Plaintiff's medical history, the type of treatment that Plaintiff received, and the improvements shown in Dr. Gillick's and Dr. Robertson's records. R. at 415. Specifically, Dr. Shah relied upon "gradual improvements" indicated by the imaging studies ordered by Dr. Robertson and Plaintiff's "practically normal" exams with his treating physician. *Id.*

Orthopedic surgeon Dr. Joseph Defeo evaluated Plaintiff on September 23, 2011, and concluded Plaintiff was "totally disabled." R. at 569. By "totally disabled," Dr. Defeo meant that Plaintiff could sit one hour total and stand/walk one hour total in an 8-hour workday, he would only be able to sit consecutively for 5-10 minute periods, and he was unable to lift more than 5 pounds. R. at 573-75. Dr. Defeo based his conclusion upon a physical examination which included a vertical compression test, percussion tests, a straight leg test, as well as clinical observations such as Plaintiff's inability to get on the examination table. R. at 565-66. Plaintiff's "total disability" stemmed from symptoms present since the accident in 2008. R. at

576.  These symptoms included pain in the neck and low back and diminished sensation along the left sciatic nerve distribution.  R. at 572.  Dr. Defeo noted these symptoms were "constant." *Id.*

B. Procedural History

On May 5, 2009, Plaintiff protectively filed applications for a period of disability and disability insurance benefits ("DIBS"), alleging disability beginning July 29, 2008.  R. at 13.  These claims were initially denied on September 15, 2009.  *Id.*  Thereafter, Plaintiff timely filed a written request for a hearing on November 14, 2009, and on March 16, 2011, Plaintiff appeared at a hearing held in Corning, New York, before Administrative Law Judge ("ALJ") Edward Pitts. *Id.*

During Plaintiff's hearing, he testified regarding his pain and limitations since the motor vehicle accident on July 29, 2008.  Plaintiff stated that he "had difficulty sleeping at night due to his pain" and he had "tingling" in his legs causing them to be "wobbly" and weak.  R. at 45, 59-60.

Plaintiff also estimated his limitations.  He stated that he could sit for no more than 1 hour before he had to get up and move around for 10 to 15 minutes, he could only stand for 10 minutes before he had to sit or lie down, he could only walk about 150 yards, and he could not lift upwards of 10 pounds.  R. at 51-52, 54.

Plaintiff also discussed his daily living activities.  He testified that he was able to walk his mother's 4 pound dog, cook and take care of his daily hygiene, and sweep or vacuum for a "very short period of time" before he needed to lie down.  R. at 49-50, 57.  He testified that he no longer grocery shopped, but was capable of doing so.  R. at 50.

Finally, Plaintiff spoke about his treatment.  He stated that he attended 60 sessions of physical therapy.  R. at 42.  Plaintiff also stated that while physical therapy helped initially, the

benefits eventually ceased.  R. at 42-43.  Plaintiff noted that his medications caused him to be drowsy and have difficulty concentrating.  R. at 59.

In a decision dated April 12, 2011, ALJ Pitts found that Plaintiff was not disabled within the meaning of the Social Security Act.  R. at 20.  The ALJ adhered to the Social Security Administration's five-step sequential analysis for evaluating applications and determining whether an individual is disabled.  *See* C.F.R. § 404.1520 and 416.920(a)(4)(i)-(v)(2009).

Under step one of that process, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since July 29, 2008, the alleged onset date.  R. at 15.  At steps two and three, the ALJ found that Plaintiff's impairments, including multiple fractures of the back, ribs, and sternum, were severe within the meaning of the regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4.  R. at 15-16.  The ALJ concluded Plaintiff's diabetes, eye problems, and neuropathy were considered non-severe physical impairments due to a lack of "objective medical evidence."  R. at 16.  At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform "a full range of sedentary work," however, his past relevant work exceeded his residual functional capacity.  R. at 19.  In determining that Plaintiff could perform "sedentary work," the ALJ gave "some weight" to the opinions of Plaintiff's treating physician Dr. Robertson because her findings were not supported by the medical records.  R. at 18.  The ALJ also gave "some weight" to the opinions of Dr. Sonka and Dr. Shah, Plaintiff's consultative examiners.  R. at 18-19.  The ALJ further determined that Plaintiff was not fully credible because his complaints were inconsistent with the medical records and his daily living activities.  R. at 17-18.  At step five of the analysis, the ALJ used the Medical-Vocational Rules found in 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Rules") to arrive at a finding of the Plaintiff not being disabled.  *Id.*  Specifically, he found that "[b]ased on residual

functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.18." *Id.*

On December 16, 2011, the Social Security Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner.  R. at 1-2.  Plaintiff timely commenced this action on February 13, 2012, which was later transferred to my docket.

DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Secretary of Health & Human Serv.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Under the SSA, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  "The impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v.*

*Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).  "The claimant has the general burden of proving

that he or she has a disability within the meaning of the Act, and bears the burden of proving his

or her case at steps one through four of the sequential five-step framework established in the

SSA regulations." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks

and citation omitted).

    In applying these standards, I find that the Commissioner's decision is supported by

substantial evidence, and it must therefore be affirmed.

    In arguing otherwise, Plaintiff advances two main reasons why this Court should reverse

the Commissioner's decision.   First, Plaintiff argues that the ALJ misapplied the treating

physician rule, and second, that the ALJ inappropriately determined his credibility.

    A. Medical Evidence

    Turning first to Plaintiff's claim that the ALJ failed to give appropriate weight to the

opinions of Plaintiff's treating physician, Dr. Robertson, I agree that the ALJ could have

provided more detail to explain his decision.   However, a thorough review of the record

establishes that the weight afforded to Dr. Robertson's opinions by the ALJ was indeed proper.

    It is well settled that the opinion of a claimant's treating physician as to the nature of the

impairment is given "controlling weight" so long as it is supported by medically acceptable

clinical and laboratory diagnostic techniques and it is not "inconsistent with substantial evidence

in the record." 20 C.F.R. § 404.1527(d)(2); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

When determining whether to give a treating physician's opinion controlling weight, the ALJ

must consider: (i) the frequency of the examination and the length, nature and extent of the

treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the

consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other factor's brought to the Social Security Administration's attention that

tend to support or contradict the opinion. *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Even if the above listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to some weight, and should not be disregarded. *See* S.S.R. 96-2p (1996); *see also Schaal*, 134 F.3d at 504.

However, the treating physician's opinion may not be entitled to controlling weight when it contradicts other "substantial evidence" in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Otts v. Commissioner of Social Sec.*, 249 Fed. App'x 887, 889 (2d Cir. 2007) (unpublished) ("An ALJ . . . may also reject such an opinion [from a treating source] upon the identification of good reasons, such as substantial contradictory evidence in the record"). "Substantial evidence" includes other expert medical opinions or a treating physician's earlier treatment notes. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).

In this case, the ALJ gave "some weight" to Dr. Robertson's conclusion of total disability, but deemed it non-controlling because (1) he found "no support in Dr. Robertson's own treating record for any limitations in sitting, or standing, or a need to lie down during a workday;" and (2) he found "no other medical records supporting [Dr. Robertson's conclusion]." R. at 18. Specifically, the ALJ stated that the physical therapy reports were devoid of any support. *Id.*

The statement of reasons from the ALJ could have been more detailed. However, a review of the record in this case reveals that the ALJ did not err in assigning less than controlling weight to Dr. Robertson's opinion. Inconsistencies between her treatment notes and final opinions constitute "good reasons" for assigning her opinions non-controlling weight. *See Campbell v. Astrue*, No. 12-CV-6103T, 2013 WL 1221931, at *2 (W.D.N.Y. June 29, 2013)

(stating an ALJ may "properly discount" a treating physician's opinion if it is inconsistent with "[her] own treatment notes").

Dr. Robertson's narrative from August 11, 2010, was internally inconsistent with her ongoing treatment notes. Dr. Robertson indicated Plaintiff "continually" had excruciating pain in his neck and back since the accident preventing Plaintiff from sitting for more than 30 minutes at a time before needing to lie down. R. at 418. However, less than a month earlier, Plaintiff's physical examination revealed "no pain with ROM," and less than two weeks after the narrative, Dr. Robertson again indicated Plaintiff had "no pain with ROM." R. at 516, 519. In fact, Dr. Robertson found Plaintiff experienced "no pain" during her physical examinations in eight out of his nine visits. R. at 499, 502, 505, 508, 510, 513, 516, 519, 523. Furthermore, according to Dr. Robertson's treatment notes, Plaintiff opined on several occasions that his general health was "good" and he was experiencing no joint pain or musculoskeletal pain. R. at 501, 512, 521.

Dr. Robertson's opinions in the Multiple Impairment Questionnaire were also internally inconsistent with her ongoing treatment notes and earlier narrative. Dr. Robertson concluded that Plaintiff could "sit for 1-hour total" and "stand/walk less than 1-hour total" in an 8-hour workday, and was unable to lift or carry even five pounds or use his upper extremities to grasp, manipulate or reach for objects due to the following symptoms present since the accident in 2008: (1) neck and lower back pain; (2) numbness and weakness of the arms; and (3) fatigue. R. at 551-57. However, since 2008, Dr. Robertson's physical exams consistently indicated "no pain with R[ange] O[f] M[otion]" (R. at 496, 499, 502, 505, 508, 510, 513, 516, 519, 523); "full R[ange] O[f] M[otion]" in the neck and no joint pain in the spine (R. at 496, 499, 502, 505, 508, 510, 513, 516, 519, 523); "full strength" in his arms and legs (R. at 496, 499, 502, 505, 508, 510, 513, 516, 519, 523); no numbness/neuropathy (R. at 498, 501, 504, 507, 509, 512, 515, 518, 521); no fatigue (R. at 498, 501, 504, 507, 515, 518, 521); no problems sleeping (R. at 521);

reflexes and mobility in all extremities intact (R. at 496, 499, 502, 505, 508, 510, 513, 516, 519,

523); and normal gait (R. at 496, 499, 502, 505, 508, 510, 513, 516, 519, 523). Furthermore, Dr.

Robertson's "poor" prognosis is questionable in light of her treatment records from a few months

earlier in which she noted Plaintiff's general health was "good." R. at 521.

     Dr. Robertson's letter to Plaintiff's counsel[3] where which she concluded that Plaintiff

was "totally disabled," was not only inconsistent with her earlier treatment notes, but was also

inconsistent with the Multiple Impairment Questionnaire from several months earlier. In that

letter, Dr. Robertson unexplainably downgraded Plaintiff's condition further stating he was

"unable to stand for more than 15 minutes at a time . . . [or] sit for more than 15-20 minutes at a

time" due to his "continual back and neck pain." R. at 561.

     Based on these inconsistencies between Dr. Robertson's various opinions and notes, the

ALJ did not err, and "good reasons" indeed exist for affording Dr. Robertson's opinions less than

controlling weight.[4]

---

[3] Defendant argues the letter and Dr. Defeo's report should not be considered because "they describe plaintiff's condition after the [ALJ's decision]." Defs.' Mot. J. on Plead., at 20. Defendant's argument fails because both Dr. Robertson and Dr. Defeo specify that the symptoms mentioned in the report and letter have been present since the accident in 2008. R. at 561, 576. *See Farina v. Barnhart*, No. 04 CV 1299 JG, 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005) (Gleeson, J.) (the requirement to review new evidence submitted to the Appeals Council hinges on whether the evidence relates to the period on or before the ALJ's decision, not the date of the report itself).

[4] Plaintiff also argues Dr. Gillick's conclusion that Plaintiff remained "disabled from all work activities" is consistent with Dr. Robertson's finding, and, thus, Dr. Robertson's opinion is consistent with the record as a whole. Pls.' Mot. J. on Plead., at 15. Plaintiff's argument falls short for several reasons. First, Dr. Gillick's conclusion of total disability is not entitled to determinative weight because it is a decision reserved solely for the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (a "physician's statement that the claimant is disabled cannot by itself be determinative"). Second, aside from Dr. Gillick's conclusion of disability, Dr. Robertson's notes are a mirrored contradiction of Dr. Gillick's notes. For example, Plaintiff presented to Dr. Gillick in October 2008, November 2008, March 2009, and May 2009 with the following symptoms: (1) limited ROM with pain; (2) tenderness in the spine; (3) fatigue. R. at 260-63. However, Plaintiff presented to Dr. Robertson in October 2008, December 2008, and April 2009 with no pain with ROM, denying fatigue, and with no tenderness in the spine. R. at

Plaintiff also argues that the Appeals Council erred by affording Dr. Defeo's opinion little or no weight. I disagree.

Dr. Defeo's conclusion was inconsistent with the treating physician's (Dr. Robertson's) underlying treatment notes, thus, his opinion was entitled to little or no weight. 20 C.F.R. § 404.1527(c)(4) (2012) (stating that the more consistent an opinion is with the record as a whole, the more weight it will be given). Specifically, Dr. Defeo opined several symptoms were "constantly" present since the accident in 2008, which caused Plaintiff's limitations rendering him totally disabled from all work activities. R. at 572, 576. These symptoms included: (1) muscle weakness . . . and diminished sensation along the sciatic nerve distribution; and (2) neck and back pain caused by back spasms and trigger points. R. at 571-72. During a two-year period following the accident, *every* examination conducted by Dr. Robertson indicated an absence of trigger points, full muscle strength in Plaintiff's extremities, and the Plaintiff's denial of numbness altogether. R. at 495-524. Undercutting Dr. Defeo's opinion further, Dr. Robertson indicated Plaintiff had "no pain with ROM" during all but one physical examination. *Id.* Furthermore, Plaintiff subjectively denied having any pain on several occasions. R. at 501, 521.

Thus, Dr. Defeo's conclusion suffers from contradictions with the treating physician's notes. Insofar as there was medical evidence inconsistent with Dr. Defeo's opinon, it was entirely proper for the Appeals Council to afford Dr. Defeo's opinion little or no weight.

Plaintiff also argues that Dr. Shah's opinion cannot constitute contrary substantial evidence required to override the treating physician's diagnosis because he was a non-examining source. Plaintiff incorrectly states the law. Opinions of non-examining sources, if supported by

---

498-500, 504-05. The inconsistencies between the symptoms present in Dr. Robertson's physical examinations and Dr. Gillick's physical examinations, which were conducted merely days apart, overshadow the vague, consistent conclusion of the two doctors. *See Snell*, 177 F.3d at 133 (the "less consistent [an] opinion is with the record as a whole, the less weight it will be given").

evidence in the record, may override treating sources opinions. *See Gonzalez v. Halter*, 212 F. Supp. 2d 137, 140 (W.D.N.Y. 2002) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995)).

In this case, Dr. Shah specifically relied upon the "virtually normal" physical examinations in Dr. Robertson's treatment notes in conjunction with progressing imaging studies revealing healing fractures. R. at 415. He also relied on Dr. Gillick's and Dr. Robertson's treatment notes which indicated "significant improvements" with conservative, non-invasive treatments. *Id.* In other words, Dr. Shah's opinion is in fact supported by substantial evidence in the record.

Plaintiff also argues that Dr. Sonka's opinion cannot constitute substantial evidence because he examined the Plaintiff on a single occasion. While a one-time examination is a factor to be considered, the report of a consultative physician who examines the Plaintiff and reaches conclusions based upon a one-time examination may constitute substantial evidence in support of an ALJ's opinion. *Campbell*, 2013 WL 1221931, at *12 (citing *Monguer v. Hekler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). As a result, the ALJ did not err in affording Dr. Shah's and Dr. Sonka's opinions "some weight" in making an RFC determination.

Finally, Plaintiff argues the ALJ could not make a determination that Plaintiff was capable of "sedentary work" when some physicians opined Plaintiff could perform "light work" and the other physicians opined Plaintiff could only perform less than "sedentary work." *Id.* The ALJ's conclusion is not error, as it is well established that a physician's opinion that a Plaintiff can perform "light work" encompasses the ability to perform "sedentary work." *See Babcock v. Barnhart*, 412 F. Supp. 2d 274, 279 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1567(b)) ("If someone can do light work, we determine that he or she can also do sedentary

work," with some exceptions).   Thus, the ALJ's determination was based upon substantial evidence in the record.

### B.    Credibility of the Plaintiff

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's credibility. Pls.' Mot. J. on Plead., at 16.  The credibility of witnesses, including the claimant, is primarily determined by the ALJ and not the courts. *Carroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).  An ALJ may properly accept or reject claims of severe, disabling pain after considering the claimant's subjective testimony, the objective medical evidence, and any other factors deemed relevant.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ must follow a two-step process in evaluating the claimant's statements regarding pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms.

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *2 (S.S .A.).

If objective evidence alone does not substantiate the "intensity, persistence, or limiting effects" of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to alleviate the symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  An ALJ who rejects subjective

testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (2d Cir. 1987) (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). Failure to consider every factor is not grounds for remand if the ALJ gives reasons that are "sufficiently specific to conclude that he considered the entire evidentiary record." *Wischoff v. Astrue*, No. 08-CV-6367-T, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010).

Here, the ALJ found that the Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but the claimant's statements concerning the "intensity, persistence and limiting effects" of the symptoms were not credible "to the extent they [were] inconsistent with the evidence of record." R. at 18. I find that determination to be proper.

The Plaintiff claimed he was capable of caring for himself. He could shower, cook, feed himself, and shop for limited periods of time. R. at 49. Plaintiff testified he often drove an hour and a half to Pennsylvania to visit friends and drove to church on Sundays. R. at 57-58. While Plaintiff stated that he needed help with major lifting, he testified that he was able to clean. R. at 50. The fact that Plaintiff can perform daily life activities is not determinative, but instead are factors that the ALJ could properly consider, along with the rest of Plaintiff's testimony.

Following the accident, Plaintiff's treatment was relatively minimal and non-invasive. His treatment consisted of orthotics (bracing), physical therapy, and injection therapy. On multiple occasions, it was noted that the physical therapy and the bracing helped resolve the neck and back pain and symptoms. R. at 256, 260, 261, 264.

With respect to neck and back pain, Plaintiff claimed that his pain only allowed him to sit or stand for a limited period of time before needing to lie down. R. at 50-52. However, Dr.

Robertson's physical exams, as set forth more fully above, revealed generally mild findings which quickly resolved over the course of the record regarding range of motion, the location, intensity, and characteristics of the pain Plaintiff claimed to endure.  As recently as November 2010, Plaintiff opined to his treating source that his general health was "good," and he denied all musculoskeletal pain whatsoever.  R. at 521.

Similarly, Plaintiff testified that his injuries caused fatigue (R. at 59), difficulty sleeping (R. at 59-60), numbness (R. at 34), and irritability (R. at 61).  The medical records reflect Plaintiff continually denying fatigue (R. at 498, 501, 504, 507, 515, 518, 521), numbness (R. at 498, 501, 504, 507, 509, 512, 515, 518, 521), difficulty sleeping (R. at 521), and irritability (R. at 498, 501, 521).  Furthermore, Plaintiff testified that his medication caused these side effects.  R. at 59.  However, Plaintiff explicitly told Dr. Robertson on multiple occasions that his medication caused "no side effects."  R. at 504, 507, 509, 511, 521.

Finally, the ALJ noted Plaintiff's "lack of interest in vocational rehabilitation [which] detracts from his credibility regarding his motivation to return to work."  R. at 18.  This finding is supported by the Plaintiff's testimony before the ALJ (R. 61-63), and it was entirely proper for the ALJ to consider Plaintiff's motivation, or lack thereof, to return to work when assessing Plaintiff's credibility.  *See, e.g., Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 337 (W.D.N.Y. 2008); *Rouse v. Astrue*, No. 09-CV-0557A, 2010 WL 5253187 at *6 (W.D.N.Y. Dec. 16, 2010).

Based on these multiple inconsistencies and the Plaintiff's lack of interest in vocational rehabilitation, the ALJ's assessment of Plaintiff's credibility finds the necessary support in the record, and will be upheld.

## CONCLUSION

Based upon all of the foregoing, I find that the Commissioner's determination is supported by substantial evidence in the record and, accordingly, it is affirmed.  Plaintiff's

Motion for Judgment on the Pleadings (Dkt. #6) is DENIED, Defendant's Motion for Judgment on the Pleadings (Dkt. #4) is GRANTED, and this case is dismissed.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: May 27, 2014
       Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge